degree by natural feelings of indignation and resentment against the mother, may be erroneously exercised; and the situation, therefore, leaves the court no recourse but to say that either the child must be left without any knowledge of his mother until he is of an age to choose for himself, when long years of want of knowledge of her may have reduced the natural feelings to a faint sentiment, or must allow to him the sight and knowledge of a mother at such intervals as will not at all seriously impair the control and guidance of the father, and yet will gradually prepare the offspring by such knowledge of her existence and occasional sight of her face for a better ability of choice than he would be able to exercise as to what the future relations with her shall be. The decision thus resting upon this court, I cannot take the responsibility of denying such a privilege to the child. The sight or knowledge of the mother 10 or 15 years hence may be practically worthless. Such knowledge now and henceforth may be that which the child in after years would determine was what should have been accorded to him. No harm can result by such occasional sight. Nor is there any evidence before me that the daily life of this defendant is such as to injure that child by her occasional presence; his care, guidance, and control being still in all things left with the husband. I make the directions in general terms simply to see whether counsel may not agree upon more precise details. I think the mother should be admitted to the presence of the child at least four times a year until further order of the court. If that has to be done under the direction and in the presence of a referee to be appointed by this court, who shall have charge of the details, it can be so done; but it seems to me that all such details might be arranged without the necessity of the supervision of an officer appointed by this court, the child to remain during visits under the personal control of the husband, or of any friend whom he may choose to delegate for that purpose.

Ordered accordingly.

---

(22 Misc. Rep. 555.)

### SAFFER v. WESTCHESTER ELECTRIC RY. CO.

(City Court of New York, General Term. January 31, 1898.)

1. STREET RAILROAD—COLLISION WITH VEHICLE.
   Where a motorman operating an electric car, running from 12 to 20 miles an hour, made no attempt to stop it until it struck a wagon which was stuck in the roadbed within 50 feet of an electric street light, although the driver called to him repeatedly to do so, the motorman was guilty of negligence.

2. SAME—CONTRIBUTORY NEGLIGENCE.
   Where a driver, finding the ground too soft for the horses to pull the wagon, drove onto a railway company's hard roadbed, where his wagon became stuck in a hole, and called repeatedly to the motorman of an approaching car to stop it, he was not guilty of contributory negligence.

Appeal from trial term.

Action by Anthony Saffer against the Westchester Electric Railway Company. Appeal by the defendant from a judgment entered

upon the verdict of a jury, and from an order denying their motion for a new trial made on the judge's minutes.    Affirmed.

Argued before SCHUCHMAN and O'DWYER, JJ.

Hoadly, Lauterbach & Johnson, for appellant.
Welch & Daniels, for respondent.

SCHUCHMAN, J.    This action was brought to recover damages alleged to have been sustained by the plaintiff through the defendant's negligence in running a trolley car into a horse and truck that plaintiff owned and was driving.    The plaintiff, in presenting his side of the case, proved that on December 19, 1895, at about 6:30 o'clock p. m., he drove his horse and truck loaded with marble northwardly along a road called Boston or Bear Swamp road, on the right side of which defendant operated a line of trolley cars.    Plaintiff found the road very soft and loamy, so that the horse could not pull through. He therefore drove onto the hard trolley roadbed.    He got stuck on that in a hole, and, seeing a trolley car coming towards him southwardly, he was endeavoring to turn and get off the track, but, being stuck, he could not succeed.    He then yelled to the motorman in charge of the car repeatedly, a dozen times, "Stop the car."    The car was about 300 feet away when the plaintiff first saw it.    It was run at the rate of 12 to 20 miles an hour.    It was a clear night, not foggy, and an electric street light was within 50 feet of the accident.    The motorman made no attempts to stop the car until it struck plaintiff's horse and truck, injuring the horse so much that it had to be killed, overthrowing the truck, and throwing plaintiff off the wagon, so that he became unconscious, and had to keep to bed for four weeks to heal his bruises and injuries occasioned thereby.    This evidence is sufficient to charge the defendant's motorman with want of exercise of care and caution of an ordinary prudent man in running the car against plaintiff's horse and wagon, under the circumstances in this case.    The evidence fully absolves plaintiff of contributory negligence. To be sure, all the evidence presented on plaintiff's behalf is contradicted by the defendant's side of the case; but that conflict is settled by the jury rendering a verdict for the plaintiff in the sum of $500.    The plaintiff proved the value of the horse at $250, the truck at $100, the harness at $50, the medical services and medicines at $119, and the loss of his services at $25 a week, being for the four weeks during which he was laid up, $100, making a total of $619; being in excess of the $500 verdict rendered.    For that reason the evidence admitted by the trial judge, complained of in the appellant's fourth point, to the effect "that for about nine months after the accident occurred plaintiff was unable to work," etc., did not act injuriously upon the minds of the jury in fixing the amount of their verdict to defendant's prejudice.    The loss of time and services occasioned to plaintiff by the injury was properly pleaded.    None of the various exceptions present reversible error, and therefore the judgment and order appealed from are affirmed, with costs.